# UNITED STATES DISTRICT COURT

for the

Southern District of California

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched*<br>*or identify the person by name and address)*<br>**GOOGLE INC.**<br>**1600 AMPHITHEATRE WAY**<br>**MOUNTAIN VIEW, CALIFORNIA** | )<br>)<br>)<br>)<br>)<br>) |

Case No. **09 MJ 2855**

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that there is now concealed on the following person or property located in the _____ Northern _____ District of _____ California _____ *(identify the person or describe property to be searched and give its location):* **See Attachment A-1**

The person or property to be searched, described above, is believed to conceal *(identify the person or describe the property to be seized):* **See Attachment B-1**

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of _____ 18 _____ U.S.C. § _____ 371, 554 _____ , and the application is based on these facts: **And also 50 U.S.C. Section 1705.**
**See Attached Affidavit**

☐ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Matthew R. Murphy, Special Agent, ICE
*Printed name and title*

Sworn to before me and signed in my presence.

Date: **9/25/09**

*Judge's signature*

City and state: San Diego, California

Louisa S. Porter, United States Magistrate Judge
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF

## APPLICATION FOR SEARCH WARRANT

I, Matthew R. Murphy, being duly sworn, hereby depose and state as follows:

1.      I am a Special Agent (SA) of U.S. Immigration and Customs Enforcement (ICE), and have been so employed since June 2003. I am a graduate of the Federal Law Enforcement Training Center (FLETC), Glynco, Georgia. At FLETC, I was trained in, among other things, criminal investigative techniques. I have participated in criminal investigations involving, among other things, the illegal export of military and defense articles and "dual use" items (used in both civil and military functions) out of the United States. I have received formal training in the laws and regulations relating to the Arms Export Control Act, 22 U.S.C. §§ 2778, and the International Emergency Economic Powers Act (IEEPA), 50 U.S.C § 1705, and I have conducted and participated in investigations of violations of these laws and regulations.

2.      This affidavit is in support of applications by the United States of America for search warrants for Google Inc. ("Google"), Yahoo! Inc ("Yahoo"), and Mail.com Media Corporation ("Mail.com"). I seek authority to search Google, 1600 Amphitheatre Way, Mountain View, California, Yahoo!, 701 First Avenue, Sunnyvale, California, and Mail.com 9800 S La Cienega Blvd., 14th Floor, Inglewood, California, as described in Attachments A-1, A-2, and A-3, respectively, for the following email accounts, described in Attachments B-1, B-2, and B-3:

> 1) essi.taghavi@gmail.com;
>
> 2) h.azadbakht51@gmail.com;
>
> 3) Michael.taghavi@gmail.com;

4)  zmbiz@yahoo.com;

5)  irangrand@yahoo.com; and

6)  h_azad@mail.com

for items which constitute evidence, fruits and instrumentalities of violations of federal criminal law, namely, 50 U.S.C. § 1705 (the International Emergency Economic Powers Act), 18 U.S.C. § 554 (Smuggling Goods from the United States), and 18 U.S.C. § 371 (conspiracy to commit offenses against the United States).

3.      The facts set forth in this affidavit are based on my own personal knowledge, knowledge obtained from other individuals during my participation in this investigation (including law enforcement officers), my review of documents and computer records related to this investigation, and information gained through my training and experience. Because this affidavit is submitted for the limited purpose of establishing probable cause for a search warrant, it does not set forth every fact that I or others have learned during the investigation.

## STATEMENT OF PROBABLE CAUSE

### A. Introduction

4.      As described below, this investigation has uncovered probable cause to believe that Esmaeil Taghavi has conspired, and is conspiring, with other individuals to illegally export approximately 19,000 laptop computers from the United States for ultimate delivery to Iran, in violation of the Iranian Transaction Regulations. The conspirators have used the previously-mentioned Google, Yahoo and Mail.com email accounts to communicate concerning the illicit transaction.

**B.  Legal Background**

**IEEPA and the Iranian Transaction Regulations**

5.      Pursuant to the authority under the International Emergency Economic Powers Act ("IEEPA"), the President of the United States and the executive branch have issued orders and regulations governing and prohibiting certain transactions with the Islamic Republic of Iran (Iran) by U.S. persons or involving U.S. goods.  Title 50, United States Code, Section 1705 provides:

> (a) Unlawful acts.  It shall be unlawful for a person to violate, attempt to violate, conspire to violate, or cause a violation of any license, order, regulation, or prohibition issued under [the International Emergency Economic Powers Act].
>
> (b) . . .
>
> (c) Criminal penalty.  A person who willfully commits, willfully attempts to commit, or willfully conspires to commit, or aids and abets in the commission of, an unlawful act described in subsection (a) shall, upon conviction, be fined . . ., or if a natural person, may be imprisoned for not more than 20 years, or both.

6.      The Secretary of the United States Department of Treasury, in consultation with the Secretary of State, promulgated the Iranian Transaction Regulations, Title 31, United States Code of Federal Regulations, Part 560.  The Iranian Transaction Regulations generally prohibit any person from exporting or causing to be exported from the United States to Iran without a license most goods or technology without having first obtained a validated export license from the United States Department of Treasury, Office of Foreign Assets Control (OFAC).

7.      The Iranian Transaction Regulations impose the following prohibitions, among others:

> Section 560.204:  Prohibited exportation, reexportation, sale or supply of goods, technology, or services to Iran.

Except as otherwise authorized . . . the exportation, reexportation, sale, or supply, directly or indirectly, from the United States, or by a United States person, wherever located, of any goods, technology, or services to Iran or the Government of Iran is prohibited . . .

Section 560.203: Evasions; attempts.

Any transaction by any United States person or within the United States that evades or avoids, or has the purpose of evading or avoiding, or attempts to violate, any of the prohibitions contained in this part is hereby prohibited.

## C. **Summary of Investigation**

8.      On July 8, 2009, a cooperating witness (the "CW") with prior felony convictions conducted a consensually-monitored meeting with ESMAEIL TAGHAVI for approximately two hours at ESMAEIL TAGHAVI'S business, San Diego EZ Riders, in Escondido, California.[1] The conversation took place in the Farsi Language. The conversation was translated by Language Specialist Mamad Shirazi, Department of Homeland Security's Interpreter's Unit. My review of the translation transcripts revealed that ESMAEIL TAGHAVI informed the CW he was attempting to set up a business transaction to send thousands of laptop computers to Iran. ESMAEIL TAGHAVI explained how the laptops would be trans-shipped through London.

9.      During the conversation with the CW about supplying laptop computers to Iran, ESMAEIL TAGHAVI made reference to a "Mr. Azadbakht":

> "Look, the good thing about it is that Mr. Azad-" what was it? Azadbakht? Nikbakht? - he said, "He does all the..." Of course, he himself had said the same thing to me, he said, "Regarding how much you sell it for, you don't have a problem, because we tell you what our purchase price is."

Later in the conversation, TAGHAVI also stated:

TAGHAVI:         And I am telling you, in Iran, they are still educating on computers. Here, laptops are dying out.

---

[1]     I later learned that the CW and ESMAEIL TAGHAVI smoked opium during a subsequent consensually-monitored meeting on July 28, 2009.

CS:               Out, yeah.

TAGHAVI:          I told you 2011…I was talking to Haji that day, I said these…until when
                  do these mother*****rs want to …He said, "In Iran, you know

                  *[Loud microphone noise]*

                  if we can work with the system for three years, that is enough." That
                  means, after three years, automatically they put us away-

CS:               Yeah, they put aside, yeah.

TAGHAVI:          Why? Because there are groups.

CS:               Yeah, there are factions.

TAGHAVI:          The president changes, all the heads and groups change.

CS:               Yeah.

TAGHAVI:          At the time of Mohsen Rafighdoust, do you know what these guys Hamid
                  (UI) and Javad took with them?  They left, another group, they left,
                  another group.  Ah, let me tell you something interesting.  All of these,
                  and do you know what they told me at the end, why they asked me to wait
                  another 10 days?  They wanted to do whatever they were going to do after
                  the election.  Because they had a one percent doubt that-

CS:               Ahmadinejad may not win.

TAGHAVI:          Ahmadinejad, how do you say, their group would fall apart.  That's why
                  they kept telling me, "Wait another ten days."
                  In the same meeting, I turned around and said, "I won't wait ten days, I
                  won't wait one day either.  But I am sure I will come back." He said why?
                  I mean, I knew that Ahmadinejad is what-do-you-call-it…I knew, I said,
                  "Nothing is gonna change, I'll be back."
                  Haji said, he said, "Yesterday Mr. Azadbakht had said that Mr. Taghavi
                  likes Mr. Ahmadinejad very much and he very much knew when he said
                  that."
                  If I knew, this was something-

CS:               It was obvious.

TAGHAVI:          this was written all over.  There are so much forgeries in that country-

10.     On July 31, 2009, an undercover agent (the "UC") with the Defense Criminal Investigative Service and the CW had a consensually-monitored conversation with ESMAEIL TAGHAVI at a Starbucks in Del Mar, California.  My review of the consensually-monitored conversation revealed the following, in substance.  During the meeting, ESMAEIL TAGHAVI informed the UC that he had a big customer in an Arabic country that he was in the process of doing a nine million dollar deal with for approximately 20,000 toughbook computers. ESMAEIL TAGHAVI explained that he was not an employee of the Iranian Government, but that he had friends high up in the government there and wanted to use those connections to make millions of dollars.  The UC stressed the importance of being discreet when shipping the computers overseas, at which time ESMAEIL TAGHAVI stated, "I want to cover my ass too dude."  ESMAEIL TAGHAVI stated he knew there were embargoes and sanctions against Iran. When discussing payment and financing terms, ESMAEIL TAGHAVI stated he was concerned with receiving several million dollars in one of his bank accounts and having the Government ask him where it came from.  He informed the UC that although he was already involved in the present laptop deal, his customer would want more laptops in the future and the UC could be of assistance in sourcing the computers.  When discussing communications, ESMAEIL TAGHAVI stated he knew the UC knew what he/she was doing, but that it was important to be cautious in the email.  ESMAEIL TAGHAVI stated, "These computer buyers, I think they are from Iran, but I don't know, as you said, we don't want to know."  During the meeting, ESMAEIL TAGHAVI and the UC also discussed the possibility that the UC could provide ESMAEIL TAGHAVI with military goods in the future that would be shipped to a customer in Iran.  ESMAEIL TAGHAVI provided the UC with his email account, essi.taghavi@gmail.com, and a telephone number for the purposes of future communication.

11.     On August 11, 2009, United States Magistrate Judge Jan Adler issued a search

warrant for email account essi.taghavi@gmail.com.  Upon executing the warrant, I received

email content for the account to on or about August 19, 2009.  I discovered numerous email

messages pertaining to TAGHAVI's efforts to send thousands of laptop computers from the

United States to Iran.

12.     For example, on June 1, 2009, TAGHAVI sent an email from

essi.taghavi@gmail.com to h_azad@mail.com.  The email stated:

> Dear Mr. Azad bakht salam
>
> I hope everything is Ok with u and ur family,that was my pleasure to know u and
> am very houner to come and visit u.  I am enclosing my resume,and hope to give
> u enough info for future bussiness,please do not hesitate to get in touch with me,if
> u need more info.God bless u and ur family.
>
> yours sincerely
>
> Esmaeil Taghavi

As previously described, TAGHAVI mentioned an "Azadbakht" when discussing the computer

transaction with the CW.  I have received a subpoena response from Mail.com for information

related to the account h_azad@mail.com.  The information shows the account was opened on

September 10, 2000, in Tehran, Iran, by an individual named HOJJAT AZAD.

13.     On June 5, 2009, ESMAEIL TAGHAVI received an email with the subject "re:

Hi" at essi.taghavi@gmail.com from irangrand@yahoo.com.  The email was in the Farsi

language.  The message was translated by Language Specialist Mamad Shirazi, Department of

Homeland Security's Interpreter's Unit.  My review of the translation transcript revealed that the

email stated as follows:

> ..........I would find out whether your mail has been received by Mr.
> Azadbakht or not. I will mail you the result. Hope to see you soon. Bye.

Farid (Fareed).

14.    On June 5, 2009, ESMAEIL TAGHAVI sent an email with the subject "re: Hi"
from essi.taghavi@gmail.com to irangrand@yahoo.com.  The email was in the Farsi language.
The message was translated by Language Specialist Shirazi.  My review of the translation
transcript revealed that the email stated as follows:

> Hello Mr. Farid,
>
> I just arrived today (probably back to US). Truly, I was waiting for your telephone
> call while in Iran, since it was agreed that if necessary, you give me a Farsi
> written resume. Also, I had brought a gift hoping that you would take it to Baba
> Anvari, however, nothing happened.  Thank you for your forwarded information,
> my nephew has agreed to look into the mobile telephones.  My dear Farid, as I
> had already told Baba Anvari, I e-mailed a resume written in English to
> Azadbakht, would you please make sure that he received it and if he needs a Farsi
> version as well.  Send my regard to your family. If you need anything, let me
> know and God speed.
>
> Esmaeil

15.    On June 11, 2009, ESMAEIL TAGHAVI received an email with the subject "Re:
Fwd: My Resume" at essi.taghavi@gmail.com from irangrand@yahoo.com.  The email was in
the Farsi language.  The message was translated by Language Specialist Shirazi.  My review of
the translation transcript revealed the email stated as follows:

> Hello Mr. Taghavi,
>
> I went to the company and intended to see Mr. Azadbakht, however, he was in a
> meeting. Rest assure, as soon as I find out, I'll forward you the result. My home
> phone: 21-88068054.

16.    On July 11, 2009, TAGHAVI sent an email from essi.taghavi@gmail.com to
h_azad@mail.com.  The email was written in the Farsi language, but was translated by Language
Specialist Shirazi.  My review of the translation transcripts revealed that the email stated:

> Hello Mr. Azad-Bakht

Haj Anvari called and informed me that you wanted to contact me. I forwarded you my resume during the days I was back in Iran. I am not sure whether I used the correct email address or not? Please send me an e-mail, so I would know that I have forwarded it to the correct e-mail address. I am at your service, should you need anything. I hope to hear soon from u.

17.   On July 21, 2009, TAGHAVI received an email at essi.taghavi@gmail.com from Michael.taghavi@gmail.com with the subject "Panasonic Toughbook Inventory." The email stated:

Attached is a copy of our Panasonic Toughbook inventory (without pricing as you requested). We wish to move all 19,000 of the Panasonic Toughbook CF-29HTM50BM or as non-touch models (CF-29H3M50BM). As per our conversation each Panasonic Toughbook CF-29 has cosmetic wear and tear with blemishes, include the factory-installed scratch guard protecting the LCD display (can be removed to make the LCD look like new), may be missing doors and covers that do not effect the use of the product as a regular notebook, and come with an as-is battery and AC adapter with U.S. power-cord. The laptops do not include the operating system, and may or may not have the COA. All of the units will be used tested-working unless your customer is interested in having them fully refurbished, but we can discuss this with Paul once they're interested.

Thank you,

Andrew Orben

18.   On July 29, 2009, ESMAEIL TAGHAVI received an email at essi.taghavi@gmail.com from irangrand@yahoo.com. The email was in the Farsi language, but was translated by Language Specialist Shirazi. My review of that translation revealed that the email stated:

Hello Dear Mr. Taghavi:

This is Mr. Azad's email: h.azadbakht51@gmail.com

Meanwhile, Father has spoken to Mr. Azad; would you please send different models of "tough-book" to the email mentioned above.

Someone from his side was supposed to contact you, has he contacted you?

Hopefully, within 2 to 3 days they would give you the answer.

TC

19.     On July 29, 2009, TAGHAVI sent an email from essi.taghavi@gmail.com to michael.taghavi@gmail.com with the subject "Iran email." The email simply stated, "h.azadbakht@gmail.com."

20.     On July 29, 2009, TAGHAVI sent an email from essi.taghavi@gmail.com to h.azadbakht51@gmail.com and Michael.taghavi@gmail.com with the subject "Panasonic Toughbook CF-29." The email stated as follows:

> Mr. Azad bakht,
>
> salam, the enclose is the pricing for cf-29 in the amount of 19,000 pieces.
> please let me know, after you review it.
> thanks
>
> Esmaeil Taghavi

21.     On July 31, 2009, TAGHAVI received an email at essi.taghavi@gmail.com from an individual identifying himself as MANSOUR PASHAEI at the address zmbiz@yahoo.com with the subject "notebooks." The email stated as follows.

> Dear Mr.Esmaeil Taghavi,
>
> Kindly be informed that we received your address from Mr.Azadbakht of Iran Computer Company (ICI ). Hereby we would like to introduce our company Alzomar Trading Co, which is registered in Duha, Qatar as per the attached. According to Mr.Azadbakht, you can provide some computers and notebooks in order to make a business with them; so he asked us to make collaboration with you in regard with importing those items and if there is any requirement for re-export or opening L/C and international financial transaction, we can coordinate the issues. Please let us know if you have such cases available that we can step up the next progress.
>
> Looking forward to hearing from you soon.
>
> Truly yours

Mansour Pashaei
Managing Director, Vesta Arya Electronics Ltd.
Tel: 0098-21-88724640
Fax: 0098-21-887418508
Mobile: 0098-912 244 9954

That same day, this same email was forwarded from essi.taghavi@gmail.com to

Michael.taghavi@gmail.com.

22.    On August 31, 2009, I received a subpoena response from Google for information

relating to the account Michael.taghavi@gmail.com.  The account Michael.taghavi@gmail.com

was created on April 15, 2006, with the name Michael Taghavi.

23.    On August 3, 2009, TAGHAVI sent an email from essi.taghavi@gmail.com to

h.azadbakht51@gmail.com with the subject "condolences."  The email stated as follows:

DEAR MR AZAD

WITH EXPRESS MY CONDOLNECES FOR UR LOST IN FAMILY. I HOPE
BE START OF JOY AND HAPPINES FOR U & UR FAMILY.  SINCE I DONT
WANT TO LOOSE THE DEALS ON TOUGH BOOKS.  I WILL APPRECIATE
UR PROMPT ATTENTION AND DECISION ON THIS MATTER.
HOPE TO HEAR FROM U SOON.

ESMAEIL TAGHAVI

24.    On August 3, 2009, TAGHAVI sent an email from essi.taghavi@gmail.com to

zmbiz@yahoo.com with the subject "Azadbakht offer."  The email stated as follows:

DEAR MR PASHEI SALAAM

I APOLOGY FOR MY LATE REPLY. THANK YOU FOR YOUR
INTRODUCTIONS, AND WE HOPE BE ABLE TO DO LONG TIME
BUSINESS IN NEAR FUTURE.  MR PASHAEI AS FAR AS I KNOW, I AM
STILL WAITING FOR RESPOND FOR OFFERED TOUGH BOOKS FROM
MR AZAD BAKHT TO PROCEED WITH THE DEAL. IF YOU HAPPEN TO
BE THE PARTY TO TAKE CARE OF THE DEAL, PLEASE LET ME KNOW
TO PROCEED. OR ,IF YOU NEED ANY MORE INFO IN REGARDS TO
THIS OFFER, PLEASE DO NOT HESITATE TO LET ME KNOW. WILL
PROVIDE YOU ASAP.

SINCERELY
ESMAEIL TAGHAVI

25.     On August 4, 2009, TAGHAVI received an email at essi.taghavi@gmail.com

from zmbiz@yahoo.com with the subject "re Azadbakht offer."  The email stated as follows:

> Salaam,
>
> Thanks for your reply. Kindly be informed that we can have a collaboration with
> you  in regard with buying the goods and hadling its transportation and
> export/import procedures.  Since we have an office in Tehran as well as in UK
> and Qatar, so we have facilities to coordinate everything with the customer and
> handle the business issues.  First of all we need to know about the goods, and we
> will coordinate it with the different sections which shall be involved.
>
> Best regards
> Mansour Pashaei

26.     On August 4, 2009, TAGHAVI sent an email from essi.taghavi@gmail.com to

zmbiz@yahoo.com with the subject "Panasonic Toughbook CF-29."  The email had an

attachment which showed images of the Panasonic Toughbook computer and pricing for the

computers depending on the quantity purchased.  The email stated as follows:

> Mr.Pashaei,
>
> Salam, the enclose is the pricing for cf-29 in the amount of 19,000 pieces which
> has been mailed to Mr.Azadbakht.  the prices are not including any shipping
> charges please let me know, after you review it.
>
> thanks
>
> Esmaeil Taghavi
>
> Essy's Computer
> 851 W Mission Ave suite B
> San diego CA. U.S.A

27.     On August 12, 2009, TAGHAVI sent an email from essi.taghavi@gmail.com to

h.azadbakht51@gmail.com with the subject "CF-29 Panasonic Tough book."  The email stated

as follows:

> Dear Mr. Azadbakht salaam
>
> I hope every thing is Ok with u and ur family.in accordance to my
> previous mail regarding the tough books, would appreciate ur final Y or N, to
> know how to proceed.last week I have done a visual inspections of the
> complete lot of these Tough books which it was in other state. We are good to
> go, as soon as I have ur answer.  once again, thank you for ur prompt attention
> to this matter.
>
> sincerely
> Esmaeil Taghavi
>
> Essi's Computer
> 851 West Mission Ave Suite B
> Escondido Ca 92025 U.S.A

28.     On or about August 17, 2009, Magistrate Judge Jan Adler issued an extension

order for a pen register/trap and trace device on the email account essi.taghavi@gmail.com.  I

subsequently obtained the following information via the pen register/trap and trace device:

- On August 23, 2009 at 0040 essi.taghavi@gmail.com received an email from h.azadbakht51@gmail.com.

- On August 25, 2009 at 1116 essi.taghavi@gmail.com sent an email to h.azadbakht51@gmail.com.

- On August 25, 2009 at 2305 essi.taghavi@gmail.com received an email from h.azadbakht51@gmail.com.

- On August 26, 2009 at 0044 essi.taghavi@gmail.com received an email from h.azadbakht51@gmail.com.

- On August 26, 2009 at 1116 essi.taghavi@gmail.com sent an email to h.azadbakht51@gmail.com.

- On September 4, 2009 at 1557 essi.taghavi@gmail.com sent an email to h.azadbakht51@gmail.com.

- On September 23, 2009 at 0904 irangrand@yahoo.com sent an email to essi.taghavi@gmail.com.

29.      On or about September 2, 2009, Magistrate Judge Barbara L. Major issued an order authorizing a pen register/trap and trace for the email account Michael.taghavi@gmail.com.  The results from that pen/trap and trace device include the following:

- On September 16, 2009 at 1200 michael.taghavi@gmail.com received an email from aorben@planitroi.com.

- On September 17, 2009 at 1004 michael.taghavi@gmail.com received an email from aorben@planitroi.com.

- On September 23, 2009 at 1301 michael.taghavi@gmail.com received an email from aorben@planitroi.com.

As set forth in paragraph 17 of this Affidavit, there is probable cause to believe that Andrew Orben is a potential supplier of the laptop computers in the United States (or a representative of the potential supplier).

30.      Based on the foregoing, I submit that there is probable cause to believe that ESMAEIL TAGHAVI is conspiring with others to export, and attempting to export, thousands of laptop computers from the United States for ultimate delivery to Iran, in violation of IEEPA and the Iranian Transaction Regulations, and that evidence of the conspiracy will be found in the following email accounts, each of which as sent or received messages directly relating to the computer transaction: essi.taghavi@gmail.com; h.azadbakht51@gmail.com; h_azad@mail.com; Michael.taghavi@gmail.com; zmbiz@yahoo.com; and irangrand@yahoo.com.  On or about September 2, 2009, ICE sent a preservation letter to Mail.com for the h_azad@mail.com account.  On or about August 28, 2009, ICE sent preservation letters to Google and Yahoo with respect to the other five email accounts for which warrants are presently sought.

## GENUINE RISKS OF DESTRUCTION

31.     Based upon my experience and training, and the experience and training of other agents with whom I have communicated, electronically stored data can be permanently deleted or modified by users possessing basic computer skills.  In this case, only if the subject receives advance warning of the execution of this warrant, will there be a genuine risk of destruction of evidence.

## PRIOR ATTEMPTS TO OBTAIN DATA

32.     The United States has not attempted to obtain this data by other means.  As described in paragraph 11 of this Affidavit, one federal search warrant has been executed for email account essi.taghavi@gmail.com, but the present application seeks data for that particular account only for the time period after the execution of the prior warrant.

## THE INTERNET SERVICE PROVIDERS

33.     Google, Yahoo and Mail.com are Internet companies which, among other things, provide electronic communication services to subscribers.  Their electronic mail services allow subscribers to communicate with others through the Internet.  Subscribers access these services through the Internet.

34.     Subscribers to Google, Yahoo and Mail.com use screen names during communications with others.  The screen names may or may not identify the real name of the person using a particular screen name.

35.     At the creation of a Google, Yahoo, or Mail.com account and for each subsequent access to the account, the service provider typically logs the Internet Protocol ("IP") address of the computer accessing the account.  An IP address is a unique address through which a computer connects to the Internet.  IP addresses are leased to businesses and individuals by

Internet Service Providers.  Obtaining the IP addresses that have accessed a particular Google,
Yahoo or Mail.com account often identifies the Internet Service Provider that owns and has
leased that address to its customer.  Subscriber information for that customer then can be
obtained using appropriate legal process.

### Procedures for Electronically Stored Information

36.    Federal agents and investigative support personnel are trained and experienced in
identifying communications relevant to the crimes under investigation.  The personnel of
Google, Yahoo and Mail.com are not.   It would be inappropriate and impractical for federal
agents to search the vast computer networks of Google, Yahoo and Mail.com for the relevant
accounts and then to analyze the contents of those accounts on the premises of Google, Yahoo
and Mail.com.  The impact on their businesses would be severe.

37.    Therefore, I request authority to seize all content, including electronic mail and
attachments, stored instant messages, stored voice messages, photographs and any other content
from the Google, Yahoo and Mail.com accounts, as described in Attachments B-1, B-2 and B-3.
In order to accomplish the objective of the search warrant with a minimum of interference with
the business activities of Google, Yahoo and Mail.com, to protect the rights of the subject of the
investigation and to effectively pursue this investigation, authority is sought to allow Google,
Yahoo and Mail.com to make a digital copy of the entire contents of the accounts subject to
seizure.  That copy will be provided to me or to any authorized federal agent.  The copy will be
forensically imaged and the image will then be analyzed to identify communications and other
data subject to seizure pursuant to Attachments B-1, B-2, and B-3, respectively.  Relevant data
will be copied to separate media.  The original media will be sealed and maintained to establish
authenticity, if necessary.

38.     Analyzing the data to be provided by Google, Yahoo, and Mail.com requires special technical skills, equipment and software.  It also can be very time-consuming.  Searching by keywords, for example, often yields many thousands of "hits," each of which must be reviewed in its context by the examiner to determine whether the data is within the scope of the warrant.  Merely finding a relevant "hit" does not end the review process.  Certain file formats do not lend themselves to keyword searches.  Keywords search text.  Many common electronic mail, database and spreadsheet applications, which files may have been attached to electronic mail, do not store data as searchable text.  The data is saved in a proprietary non-text format.  And, as the volume of storage allotted by service providers increases, the time it takes to properly analyze recovered data increases dramatically.

39.     Based on the foregoing, searching the recovered data for the information subject to seizure pursuant to this warrant may require a range of data analysis techniques and may take weeks or even months.   Keywords need to be modified continuously based upon the results obtained. The personnel conducting the segregation and extraction of data will complete the analysis and provide the data authorized by this warrant to the investigating team within ninety (90) days of receipt of the data from the service provider, absent further application to this court.

40.     Based upon my experience and training, and the experience and training of other agents with whom I have communicated, it is necessary to review and seize all electronic mails that identify any users of the subject account(s) and any electronic mails sent or received in temporal proximity to incriminating electronic mails that provide context to the incriminating mails.

41.     All forensic analysis of the imaged data will employ search protocols directed exclusively to the identification, segregation and extraction of data within the scope of this warrant. The personnel conducting the segregation and extraction will not communicate to the investigating team any information learned during the analysis that is outside the scope of the warrant. In the event that the personnel lawfully conducting the analysis identify information pertaining to crimes outside the scope of the warrant, such information will not be disclosed to the investigating team or used in any way unless a new warrant is obtained to search for such information. The new warrant may be sought by the analyst, if he or she is a sworn federal agent, or by an agent not part of the original investigating team. A federal prosecutor apart from the original investigating team will be assigned to assist in determining whether to apply for a new warrant and in obtaining such a warrant. Absent a new warrant, the segregating personnel will only search for and seize data that it would be entitled to retain independent of the new information and the original investigating team will not use any data outside the scope of this warrant even if found in plain view.

## Retention of Original Media

42.     As mentioned above, it is necessary to retain the original media supplied by the ISP in connection with this warrant. Retention of the original media must be retained in order to prove the authenticity of evidence to be used at trial, to respond to questions regarding corruption of data, to establish chain of custody of data, to refute claims of fabricating, tampering or destroying data, and, among other reasons, to address potential Brady claims where, for example, a defendant may claim that the government avoided its obligations by destroying data or returning it to a third party. The retained media will be sealed and only accessed upon further order of a court of competent jurisdiction.

Return of Search Warrant

43.      Following the execution of the warrants, returns will be submitted to the court reflecting the physical inventory as provided at Rule 41.  Within fourteen (14) days of data being provided to the investigating team from the segregation and extraction team, the government will submit a certification to the court: (1) identifying the data provided to the investigating team and the date that it was provided; (2) certifying that the original media provided by the ISP and only a single forensic image of each piece of media was retained as authorized above; (3) certifying that only data believed subject to seizure pursuant to this warrant was provided to the investigating team; and, (4) certifying that  any copies made by the government have been destroyed.  If the data provided to the investigating team was provided in electronic form, it will be sufficient identification of that data for the government to provide a true copy of the electronic storage media containing the data to the court sealed in a manner to protect its integrity and appropriate for filing.

## REQUEST FOR SEALING AND PRECLUSION OF NOTICE

44.      This is an ongoing investigation of which the targets are unaware.  It is very likely, based upon the above, that evidence of the crimes under investigation exists on computers subject to the control of the targets.  There is reason to believe, based on the above, that premature disclosure of the existence of the warrants will result in destruction or tampering with that evidence and flight, and will seriously jeopardize the success of the investigation. Accordingly, it is requested that the warrants and related materials be sealed until further order of the Court.  In addition, pursuant to Title 18, United States Code, Section 2705(b), it is requested that this Court order the electronic service providers to whom the warrants are directed not to

notify anyone of the existence of the warrants, other than personnel essential to compliance with the execution of the warrants until further order of the Court.

Matthew R. Murphy
Special Agent
U.S. Immigration and Customs Enforcement

Subscribed and sworn to before me this **25** day of September 2009

HONORABLE LOUISA S. PORTER
UNITED STATES MAGISTRATE JUDGE

## ATTACHMENT A-1

Google Inc. is an Internet service provider with its primary computer information systems and other electronic communications and storage systems, records and data located at 1600 Amphitheatre Way, Mountain View, California.

**ATTACHMENT A-2**

Yahoo! Inc. is an Internet service provider with its primary computer information systems and other electronic communications and storage systems, records and data located at 701 First Avenue, Sunnyvale, California.

**ATTACHMENT A-3**

Mail.com is an Internet service provider with its primary computer information systems and other electronic communications and storage systems, records and data located at 9800 S. La Cienega Boulevard, 14th Floor, Inglewood, California.

## Attachment B-1

I.   Service of Warrant

The officer executing the warrant shall permit Google, Inc., as custodian of the computer files described in Section II below, to locate the files and copy them onto removable electronic storage media and deliver the same to the officer.

II.  Items subject to seizure

All subscriber and/or user information, all electronic mail, images, text messages, histories, buddy lists, profiles, method of payment, detailed billing records, access logs, transactional data and any other files associated with the following accounts and screen names:

essi.taghavi@gmail.com

h.azadbakht51@gmail.com

Michael.taghavi@gmail.com

The search of the data supplied by Google pursuant to this warrant will be conducted as provided in the "Procedures For Electronically Stored Information" of the affidavit submitted in support of this search warrant and will be limited to seizing electronic mail and attachments that are evidence of violations of 50 U.S.C. § 1705 (International Emergency Economic Powers Act) and 31 CFR 560.202 and 560.204 (Iranian Transaction Regulations), 18 U.S.C. § 554 (smuggling goods from the United States), and/or 18 U.S.C. § 371 (conspiracy to commit offenses against the United States):

a.   Electronic mail and attachments referencing or related to: (1) the export, re-export or transhipment, or the potential export, re-export or transhipment of computers, computer peripherals or other goods from the United States to Iran; and (2) the negotiations, terms, methods and means of shipment, or methods and means of financing, or end users (or anticipated end users) of any of the activities or goods described in item (1) of this subparagraph;

b.   Electronic mail and attachments related to the identities and/or contact information of any co-conspirators;

c.    Electronic mail and attachments that provide context to any electronic mail reflecting the criminal activity described in this warrant including any electronic mail sent or received in temporal proximity to any relevant electronic mail and any electronic mail that identifies any users of the subject account.

d.    With respect to the email or user account essi.taghavi@gmail.com, the search of the data supplied by Google for the items described in subparagraphs a., b., and c. shall be limited to data generated from August 19, 2009 to the present.

Attachment B-2

I.   Service of Warrant

The officer executing the warrant shall permit Yahoo! Inc., as custodian of the computer files described in Section II below, to locate the files and copy them onto removable electronic storage media and deliver the same to the officer.

II.  Items subject to seizure

All subscriber and/or user information, all electronic mail, images, text messages, histories, buddy lists, profiles, method of payment, detailed billing records, access logs, transactional data and any other files associated with the following accounts and screen names:

zmbiz@yahoo.com

irangrand@yahoo.com

The search of the data supplied by Yahoo pursuant to this warrant will be conducted as provided in the "Procedures For Electronically Stored Information" of the affidavit submitted in support of this search warrant and will be limited to seizing electronic mail and attachments that are evidence of violations of 50 U.S.C. § 1705 (International Emergency Economic Powers Act) and 31 CFR 560.202 and 560.204 (Iranian Transaction Regulations), 18 U.S.C. § 554 (smuggling goods from the United States), and/or 18 U.S.C. § 371 (conspiracy to commit offenses against the United States):

a.   Electronic mail and attachments referencing or related to: (1) the export, re-export or transhipment, or the potential export, re-export or transhipment of computers, computer peripherals or other goods from the United States to Iran; and (2) the negotiations, terms, methods and means of shipment, methods and means of financing, or end users (or anticipated end users) of any of the activities or goods described in item (1) of this subparagraph;

b.   Electronic mail and attachments related to the identities and/or contact information of any co-conspirators;

c.   Electronic mail and attachments that provide context to any electronic mail reflecting the criminal activity

described in this warrant including any electronic mail
sent or received in temporal proximity to any relevant
electronic mail and any electronic mail that identifies
any users of the subject account.

Attachment B-3

I.   Service of Warrant

The officer executing the warrant shall permit Mail.com, as custodian of the computer files described in Section II below, to locate the files and copy them onto removable electronic storage media and deliver the same to the officer.

II.  Items subject to seizure

All subscriber and/or user information, all electronic mail, images, text messages, histories, buddy lists, profiles, method of payment, detailed billing records, access logs, transactional data and any other files associated with the following accounts and screen names:

   h_azad@mail.com

The search of the data supplied by Mail.com pursuant to this warrant will be conducted as provided in the "Procedures For Electronically Stored Information" of the affidavit submitted in support of this search warrant and will be limited to seizing electronic mail and attachments that are evidence of violations of 50 U.S.C. § 1705 (International Emergency Economic Powers Act) and 31 CFR 560.202 and 560.204 (Iranian Transaction Regulations), 18 U.S.C. § 554 (smuggling goods from the United States), and/or 18 U.S.C. § 371 (conspiracy to commit offenses against the United States):

a.   Electronic mail and attachments referencing or related to: (1) the export, re-export or transhipment, or the potential export, re-export or transhipment of computers, computer peripherals or other goods from the United States to Iran; and (2) the negotiations, terms, methods and means of shipment, methods and means of financing, or end users (or anticipated end users) of any of the activities or goods described in item (1) of this subparagraph;

b.   Electronic mail and attachments related to the identities and/or contact information of any co-conspirators;

c.   Electronic mail and attachments that provide context to any electronic mail reflecting the criminal activity described in this warrant including any electronic mail sent or received in temporal proximity to any relevant

electronic mail and any electronic mail that identifies
any users of the subject account.